2026 IL App (2d) 250140-U
Nos. 2-25-0140 & 2-25-0206 cons.
Order filed March 18, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,<br><br>v. JACOB A. RUBINI, Defendant-Appellant. | Appeal from the Circuit Court of Lake County.<br>Honorable George D. Strickland, Judge, Presiding.<br>No. 18-CF-2693 |

JUSTICE BIRKETT delivered the judgment of the court.
Justices Hutchinson and Jorgensen concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court did not err in dismissing defendant's section 2-1401 petition claiming that newly discovered evidence showed that his home invasion conviction was improper because he was living with the victim in the residence he was convicted of invading.  The petition was (1) untimely without excuse and (2) without merit, because the evidence was neither newly discovered nor so conclusive that it would likely have changed the outcome of the trial.

¶ 2   *Pro se* defendant, Jacob A. Rubini, appeals from a judgment of the circuit court of Lake County denying his petition under section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2022)) seeking relief from his convictions of home invasion (720 ILCS 5/19-6(a)(2) (West 2016)) and aggravated domestic battery (*id.* § 12-3.3(a)).  We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    Defendant was indicted on, *inter alia*, one count each of home invasion (*id.* § 19-6(a)(2)), attempted criminal sexual assault (*id.* §§ 8-4(a), 11-1.20(a)(1)), and aggravated domestic battery (*id.* § 12-3.3(a)). The charges stemmed from events that took place in the early morning hours of November 25, 2018. According to the indictment, defendant knowingly and without legal authority entered the dwelling of another—the victim, K.C.—who was a family or household member, placed himself on top of K.C. with his penis exposed, ripped off K.C.'s clothing, and struck K.C. about the head, causing great bodily harm.

¶ 5    On November 29, 2018, K.C. filed a petition for entry of an order of protection against defendant, which was docketed as case No. 18-OP-2212 (the OP case). On the same date, the trial court entered an emergency order of protection, which it later extended. At a hearing on March 1, 2019, the State advised the court that a plenary order of protection should be entered under section 112A-11.5(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/112A-11.5(a) (West 2018)), which provides for entry of a "protective order" where there is *prima facie* evidence of, *inter alia*, a sexual offense. (An indictment for a sexual offense constitutes *prima facie* evidence. See *id.* § 112A-11.5(a)(1).) Defendant objected. The court continued the matter to March 12, 2019, and extended the order of protection until that date. In the interim, on March 7, 2019, the parties appeared in court in the present case. The State asked the court to consolidate the present case and the OP case, but the court declined to do so. On March 12, 2019, the OP case was "non-suited" on K.C.'s request.

¶ 6    A jury trial commenced on October 29, 2019.[1] K.C. testified that, in the summer of 2018,

---

[1] A thorough recitation of the trial testimony can be found in our decision on direct appeal. See *People v. Rubini*, 2021 IL App (2d) 200064-U.

she began dating defendant and he moved into the condominium she owned. When defendant moved in with K.C., her daughter—Jacqueline Lutz—who had been living with K.C., moved into the house where defendant had been living (the Kimball house). Lutz lived in the Kimball house over the next four months with two roommates. K.C. never gave defendant keys to the condominium. K.C. testified that defendant was supposed to give her monthly payments, but she never received any money from him. Consequently, in November 2018, K.C. asked defendant to move out. Defendant moved out sometime before Thanksgiving 2018. Nonetheless, they remained in a relationship and celebrated Thanksgiving together. Although defendant was not then residing with K.C., she still cared about him. The dinner was "amicable." K.C. and defendant had sex that evening, and defendant spent the night with her in her bed. On the Friday after Thanksgiving, defendant left the condominium, telling K.C. that he was going to work. K.C. next saw defendant outside her patio door. K.C. could not recall what time it was, but it was still light outside. Defendant told K.C. that "he was taking his van and that [she] shouldn't treat people the way [she] treat[ed] them."

¶ 7    K.C. went to bed at around 10 p.m., after she ensured all the doors were locked. None of the doors had any damage. She later woke up to find defendant on top of her.[2] Defendant said, " 'Are you going to be nice? This is my p***.' " K.C. felt defendant's exposed penis next to her buttocks. K.C. grabbed defendant's penis. Defendant then began hitting her and threw her across the room. Defendant tore K.C.'s camisole off. He put a pillow over her face, causing her to

---

[2]K.C.'s testimony suggested that the Friday after Thanksgiving was November 24, 2018. However, Thanksgiving Day 2018 was November 22. Nevertheless, regardless of the day of the week, there was no dispute that K.C. went to bed on November 24, 2018, and woke up in the early morning hours of November 25, 2018, with defendant on top of her.

hyperventilate. He repeatedly struck her and pulled her hair. K.C. was eventually able to get away. She put on a robe and ran out the door. K.C. pounded on the door of a neighbor, Dean Stewart, who let her in his residence and called the police. On cross-examination, K.C. denied that defendant ever paid her bills or posted bond for her.

¶ 8     Wauconda police officer Jonathan Finze testified that he was dispatched to Stewart's residence on November 25, 2018, at about 1:40 a.m. Finze met with K.C. and took her back to her condominium. The doors were locked, but he entered through an open window. Finze did not notice any damage to the patio sliding doors.

¶ 9     After Finze left, K.C. discovered a crowbar in the kitchen. It did not belong to K.C.; she had never seen it before. She wrapped it in plastic wrap and took it to the police station. Wauconda police sergeant Timothy Burke went to K.C.'s condominium to look for any markings indicating that someone had used the crowbar to enter the unit. In court, Burke identified his photographs of the unit's patio door, which, in his opinion, revealed that the door's wood and metal frames had been forced outward toward the courtyard. Burke testified, "Based on my observation, it appears that the rear sliding glass door was pried from the outside on the deck area bending the door interior, bending forward so to speak."

¶ 10     Lutz testified for the defense. She stated that she met defendant in July 2018 and moved into the Kimball house at the end of August 2018 when defendant moved in with K.C. Lutz testified that defendant was living in the condominium on Thanksgiving 2018. She did not go to the condominium on Thanksgiving. Lutz testified that defendant arrived at the Kimball house between 8 and 9 p.m. on the evening of November 24, 2018. When counsel asked what defendant "was doing on that day," Lutz responded: "That night he came over because he said that he needed

- 4 -

to stay because my mother had kicked him out." Lutz testified that defendant left in his van "[p]robably between 12:00 and 1:00" in the morning.

¶ 11 Baiba Savage testified for the defense. Savage testified that defendant was her neighbor about eight years ago. On November 24, 2018, she had been living in a nursing home for about five months because she was unable to get an apartment due to having bad credit. On that date, defendant picked her up and allowed her to stay at the Kimball house. She stayed there for three days, from November 24 to 26, 2018. On November 24, 2018, Savage left the Kimball house with defendant at about 10 a.m. They went to the forest preserve and then to the bank. At about 12 or 1 p.m., they returned to the Kimball house, where defendant fixed a broken water line. At about 7 p.m., the police came to check on her because she left the nursing home without signing out. Savage then went to pick up her car from a friend. After doing so, she drove defendant to the condominium and dropped him off at about 10 p.m. Savage then returned to the Kimball house. Counsel asked Savage where defendant was living at that time. Savage responded: "He was living with [Cramer]."

¶ 12 Defendant did not testify.

¶ 13 The jury found defendant guilty of home invasion and aggravated domestic battery but not guilty of attempted criminal sexual assault. On January 9, 2020, the trial court merged the convictions and sentenced defendant to a 20-year prison term for home invasion. Defendant appealed, and we affirmed his conviction. *People v. Rubini*, 2021 IL App (2d) 200064-U (*Rubini I*).

¶ 14 On May 23, 2022, defendant filed a *pro se* petition under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2020)) for relief from his conviction. In his petition, defendant claimed, among other things, that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), when

it " 'blocked' " K.C. from testifying in the OP case by claiming that defendant's indictment for criminal sexual assault was a sufficient ground for entry of an order of protection.

¶ 15    The trial court summarily dismissed the petition on August 18, 2022. See 725 ILCS 5/122-2.1(a)(2) (West 2020). Defendant timely appealed, and the trial court appointed the Office of the State Appellate Defender (OSAD) to represent him. We granted OSAD's motion to withdraw and affirmed the summary dismissal. *People v. Rubini*, No. 2-22-0320 (2023) (unpublished summary order under Illinois Supreme Court Rule 23(c)) (*Rubini II*). With respect to defendant's *Brady* claim, we stated: "Even assuming, *arguendo*, that the State 'blocked' K.C.'s testimony in [the OP case], and thereby suppressed evidence, it is a matter of pure speculation whether K.C.'s testimony would have been favorable to defendant. Accordingly, there is no potentially meritorious basis for challenging the dismissal of defendant's *Brady* claim." *Id.* ¶ 18.

¶ 16    On September 11, 2024, defendant filed a motion for a new trial and to vacate judgment, which the trial court treated as a petition under section 2-1401 of the Code. The crux of defendant's petition was that he had evidence to show that he resided at K.C.'s apartment (and thus could not be convicted of home invasion) at the time of the offense (November 25, 2018). In support, he attached (1) two "ANACS coin invoices" (one undated; one dated September 20, 2018) addressed to defendant at K.C.'s address and (2) an affidavit from Savage stating that, in November 2018, she paid defendant $300 cash, which he then gave to K.C. "for rent at her condo [at] which he was residing," and that "[K.C.] signed [a] *** rent receipt *** dated November 2018." Defendant also claimed that he (1) had an audio recording (which he asserted would be "tendered through supplemental filing") of K.C. stating that "[defendant] payed [*sic*] rent to her" and (2) "ha[d] found testimony from pre-trial that would show that [K.C.] was not credible." In addition, defendant claimed that the State failed to tender (1) certain BMO Harris Bank records, (2) "rent

receipt's [*sic*]," and (3) grand jury transcripts. In support of this claim, defendant attached transcript excerpts. Finally, defendant claimed that the State violated "his right to due process 5th and 14th amendment [*sic*]" by preventing K.C. from testifying in the OP case. In support, he relied on *United States v. Rahimi*, 602 U.S. 680 (2024).

¶ 17 On November 15, 2024, the State filed a response. The State argued that (1) defendant failed to demonstrate that the allegedly newly discovered evidence was unavailable to him before trial, (2) the attached transcripts did not support defendant's claim that the State failed to tender certain evidence, (3) defendant never provided the alleged audio recording, and (4) defendant's claim about the State preventing K.C. from testifying was barred by *res judicata* and otherwise not supported by *Rahimi*.

¶ 18 On January 6, 2025, defendant filed a reply. Defendant continued to maintain that his newly discovered evidence would show that he was a resident of K.C.'s apartment. He argued that the coin invoices had been unavailable to him because K.C. possessed them and defendant was prohibited from communicating with her. He continued to argue that the State failed to tender certain evidence and the grand jury transcripts. Finally, relying on *Rahimi* as "[n]ewly [d]iscovered" because it had not been decided at the time of trial, defendant argued he was denied his right to confront K.C. in the OP case.

¶ 19 On February 18, 2025, defendant filed a motion to "[d]ismiss" the State's response. Attached as an exhibit was a four-page joint checking account statement from BMO Harris Bank addressed to defendant and K.C. at K.C.'s address. The statement period was October 26, 2018, through November 25, 2018.

¶ 20 A hearing took place on March 26, 2025. At the outset of the hearing, the trial court asked the State if it was contesting the petition's timeliness. The State answered in the affirmative, stating

that the petition "was filed well after the timeline had passed." (The State incorrectly referred to the timeline as "30 days.") The State generally maintained that none of the evidence cited by defendant was newly discovered. The State argued further that the evidence was not material. The State commented:

> "[T]he State never asserted the defendant never lived at that address, so the fact that he has bank statements or rent receipts or any other evidence that he at some point lived at that address, at some point it was his mailing address is not material. It was established at trial he was kicked out of that residence by [K.C.] who owned that residence and that essentially he did not live there at that point. The defense, at trial, their theory was she invited him in that night, not that he lived there."

¶ 21 Defendant argued that the coin invoices were newly discovered because they were unavailable to him at the time of trial. In addition, he presented the trial court with the October/November 2018 joint checking account statement from BMO Harris Bank. He claimed that the statement was not produced in response to his counsel's subpoena because the subpoena requested "only the information of the people who are listed on the account," not the "financials," which may not have been available due to "statutes that cover and screen people's personal information." According to defendant, the statement showed, among other things, "a $280 deposit November 14th, which [was] the day after [he] gave [K.C.] a $300 cash rent receipt." He claimed further that the "rent receipts" were in his van, which was under a "a preservation order"; although his counsel took pictures of the receipts, the State never turned them over. According to defendant, the receipts were "newly discovered" because they were never "raised or documented at trial." Defendant also argued that the grand jury testimony was newly discovered because it was not available to him. He claimed that the testimony showed that Finze provided conflicting accounts

regarding damage to the patio door. He also argued that he was denied his right to confront K.C. in the OP case. He argued that he could properly raise a "Sixth Amendment violation" based on *Rahimi*, which he claimed was "newly discovered case law," as it was not available at the time of trial.

¶ 22 The trial court dismissed defendant's petition. First, the court found that the petition—filed almost five years after the verdict—was untimely and that defendant failed to show legal disability, duress, or fraudulent concealment. Next, the court found none of the evidence was unknown to defendant at the time of trial. With respect to the grand jury transcripts, the court stated that, as it had previously found, the transcripts had been turned over to defense counsel. With respect to the bank records and coin invoices, the court found that they were known to defendant and discoverable with reasonable diligence. The court noted further that, had counsel believed that the bank records that had been submitted were insufficient, he could have addressed the issue before trial. With respect to defendant's claim that he was denied his right to confront K.C. at the OP hearing, the court explained,

> "[T]he proceedings of the order of protection were not the proceedings that led to your conviction. That's not what—That is not what happened during this trial. You're challenging the order of protection proceedings, which is not this trial and did not result in your conviction, and [section] 2-1401 does not allow it, ***."

Further, the court found that case law—*Rahimi*—is not evidence. Finally, the trial court concluded that none of the cited evidence would have precluded entry of the judgment.

¶ 23 On April 8, 2025, defendant filed a motion for reconsideration. Defendant reasserted the arguments made in his petition. On May 19, 2025, the trial court denied defendant's motion. This timely appeal followed.

¶ 24   On February 2, 2026, after briefing in this appeal had been completed, defendant filed a motion to supplement the record on appeal with (1) a letter to defendant, dated January 13, 2026, from the Lake County State's Attorney Office, (2) Savage's affidavit (which is already part of the record), and (3) a photograph of a receipt.

¶ 25   According to the State's Attorney's letter, it was sent in response to defendant's December 29, 2025, "Freedom of Information Request" for "Black and white copies of $300.00 rent receipt dated November 13, 2018[,] and 2 contractor work invoices ***." The State's Attorney indicated that he had found records responsive to the request and that the records were attached with signatures and personal information redacted. Attached to the letter was a photograph of a portion of a preprinted receipt booklet. One receipt was filled out and visible. The receipt was dated "11/15/2018." It indicated that $300.00 was received from "Biaba [*sic*] Savage." A circle next to "FOR RENT" was checked, followed by "Nov 15, 2018 to Dec 1, 2018." A circle next to "CASH" was also checked. The upper right-hand corner and the bottom right-hand corner were redacted with large black boxes.

¶ 26   On February 6, 2026, over the State's objection, we granted defendant's motion to supplement the record, noting that "this court will deem the attachments to the motion part of the record for whatever value they might have."

¶ 27                              II. ANALYSIS

¶ 28   Defendant contends that the trial court erred in dismissing his section 2-1401 petition. The State responds that the petition was properly dismissed as untimely. Untimeliness aside, the State contends that the petition was properly denied on the merits. We agree with the State.

¶ 29   Section 2-1401 of the Code provides a comprehensive statutory mechanism for obtaining relief from final judgments or orders that are older than 30 days. See 735 ILCS 5/2-1401 (West

2022); *People v. Vincent*, 226 Ill. 2d 1, 7 (2007). In the context of a criminal proceeding, section 2-1401 provides a means "to correct all errors of fact occurring in the prosecution of a cause, unknown to petitioner and [the] court at the time judgment was entered, which, if then known, would have prevented its rendition." *People v. Haynes*, 192 Ill. 2d 437, 461 (2000).

¶ 30 A petition under section 2-1401 "must be filed not later than 2 years after the entry of the order or judgment." 735 ILCS 5/2-1401(c) (West 2022). However, the statute provides that "[t]ime during which the person seeking relief is under legal disability or duress or the ground for relief is fraudulently concealed shall be excluded in computing the period of 2 years." *Id.* In addition, the two-year limitation period does not apply to void judgments. *Urban Partnership Bank v. Ragsdale*, 2017 IL App (1st) 160773, ¶ 16. "If the party opposing the section 2-1401 petition does not raise the limitations period as a defense, it may be waived." *People v. Pinkonsly*, 207 Ill. 2d 555, 562 (2003).

> "To obtain relief under section 2-1401, the defendant 'must affirmatively set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief.' " *Id.* at 565 (quoting *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-221 (1986)).

To justify setting aside a judgment based on newly discovered evidence, the

> "evidence must be (1) so conclusive that it would probably change the result if a new trial is granted; (2) discovered after the trial; (3) of such character that it could not have been discovered prior to trial in the exercise of due diligence; (4) material to the issues; and (5) not merely cumulative to the trial evidence." *People v. Hallom*, 265 Ill. App. 3d 896, 906 (1994).

The defendant has the burden of establishing these factors. *Id.*

¶ 31 Where, as here, a defendant raises a fact-dependent challenge to a judgment, a reviewing court will reverse a trial court's ruling on the petition only if it constitutes an abuse of discretion. *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 51. "The threshold for finding an abuse of discretion is high and will not be overcome unless it can be said that the trial court's ruling was arbitrary, fanciful, or unreasonable, or that no reasonable person would have taken the view adopted by the trial court." *People v. One 2014 GMC Sierra*, 2018 IL App (3d) 170029, ¶ 24.

¶ 32 We find no abuse of discretion. First, dismissal was proper because the petition was untimely filed and defendant failed to show any basis below to excuse the untimely filing. As noted, a section 2-1401 petition must be filed "not later than 2 years after the entry of the order or judgment." 735 ILCS 5/2-1401(c) (West 2022). Here, judgment was entered on January 9, 2020, and defendant filed his petition on September 11, 2024. Thus, it was clearly untimely. Further, defendant failed to show that the delay was attributable to legal disability, duress, or fraudulent concealment. See *id.* Although the State did not raise the untimeliness of the petition in its responsive pleading, it contended at the hearing that the petition was untimely. Thus, defendant was given the opportunity to respond in the trial court. See *Pinkonsly*, 207 Ill. 2d at 564 ("If the State wished to argue that the defendant's section 2-1401 petition was untimely, it should have done so before the trial court, where any amendments could have been made and any factual disputes could have been resolved."). However, defendant failed to address the issue at the hearing and, despite the trial court's express ruling that the petition was untimely, also failed to address the issue in his motion for reconsideration. Instead, he argues for the first time on appeal that the filing was untimely because (1) the COVID-19 pandemic restricted access to the courts, (2) he was ill

with COVID-19 three times, (3) he was imprisoned and under quarantine, (4) he had two surgeries, and (5) he required a cane to walk. Presumably, defendant's allegations are an attempt to establish that he was under a "legal disability" during these times for purposes of section 2-1401(c). Defendant has forfeited this argument by failing to raise it below. See *BMO Harris Bank, N.A. v. Malarz*, 2021 IL App (2d) 190984, ¶ 18 ("Generally, arguments not raised in the trial court are forfeited and cannot be raised for the first time on appeal."). Forfeiture aside, these conclusory allegations are insufficient. "A person suffers from a 'legal disability' where he or she is 'entirely without understanding or capacity to make or communicate decisions regarding his person and totally unable to manage his [or her] estate or financial affairs.' " *In re Doe*, 301 Ill. App. 3d 123, 126-27 (1998) (quoting *Estate of Riha v. Christ Hospital*, 187 Ill. App. 3d 752, 756 (1989)). Defendant makes no such allegations.

¶ 33　Even if the petition were timely, dismissal was proper because defendant has failed to demonstrate that the alleged newly discovered evidence could not have been discovered before trial in the exercise of due diligence. See *Hallom*, 265 Ill. App. 3d. at 906. First, as the trial court noted, defense counsel subpoenaed and received certain BMO Harris Bank records. Had counsel not received the specific bank records that he sought, the matter could have been addressed below. The bank records that defendant now relies on as newly discovered were certainly discoverable in the exercise of due diligence. Next, as for the coin invoices, defendant was certainly aware of these transactions and could have obtained these records. Although defendant claims that the invoices had been mailed to K.C. and that she did not turn them over to him, this would not have prevented defendant from obtaining them on his own. Regarding the rent receipt and Savage's affidavit, this evidence was also known to defendant at the time of trial. Indeed, according to defendant, defense counsel photographed the receipt. And the information contained in Savage's

affidavit was not newly discovered information, given that defendant was present when the events set out in the affidavit occurred. Savage testified at trial and could have testified about both the rent payment and the receipt. We note, too, that defendant's motion to supplement the record demonstrates that this information was certainly discoverable. Finally, as the trial court noted, the record refutes defendant's claim that the grand jury testimony was newly discovered because he never received it. Our review of the record reveals that, on October 17, 2019, before trial, defense counsel stated on the record that the State provided him with a transcript from the grand jury.

¶ 34 Moreover, even assuming that all the above evidence could not have been discovered before trial with the exercise of due diligence, defendant failed to demonstrate that the character of the evidence was so conclusive that it would likely have changed the outcome of the trial. See *id.* There was no dispute that defendant, at one point, lived with K.C. K.C. testified that she asked defendant to move out in November 2018. Lutz testified that she saw defendant during the evening on November 24, 2018, the day before the offense. Defendant told her that K.C. "had kicked him out." None of the evidence defendant relies on supports his claim that he lived with K.C. on November 25, 2018. Only one of the two "ANACS coin invoices," addressed to defendant at the victim's address, contains a date—September 20, 2018—which predates K.C.'s act of kicking defendant out. The BMO Harris Bank records are for the period covering October 26, 2018, through November 25, 2018, and the specific transactions defendant points to all predate the offense. None of this evidence conclusively refutes K.C.'s and Lutz's testimony that K.C. had kicked defendant out of her condominium before the offense.

¶ 35 We note further that the purported rent receipt and Savage's affidavit are also not so conclusive that they would likely have changed the result of the trial. Savage claimed in her affidavit that she gave defendant "$300 cash for her share of rent" at the Kimball property, which

she claimed was for a "month of rent," and that defendant "then gave [the money] to [K.C.] for rent at her condo [at] which he was residing." Savage's affidavit further claimed that this occurred "in November of 2018." We note that this evidence completely contradicts Savage's trial testimony. Savage testified that, on November 24, 2018, she had been living in a nursing home for about five months because she was unable to get an apartment due to having bad credit. She testified that, after defendant picked her up on November 24, 2018, she stayed at the Kimball house for three days, from November 24 to 26, 2018. She also testified that the police came to check on her because she left the nursing home without signing out. Thus, she was not living at the Kimball property long enough to have owed defendant a "month of rent." In any event, the purported rent receipt and Savage's affidavit, even if taken as true, would establish only that Savage paid defendant rent for her stay at the Kimball property from November 15, 2018, through December 1, 2018, and that defendant "then gave [the money] to [K.C.] for rent at her condo [at] which he was residing." However, this evidence does not conclusively establish the rental period as related to any rental payment from defendant to K.C. Regardless, as noted, there is no dispute that K.C. owned the condominium where the offense occurred and that she kicked defendant out prior to the offense. To the extent defendant claims that any of the evidence would be impeaching, we note that "newly discovered evidence which has only the effect of impeaching, discrediting, or contradicting a witness is insufficient to justify a new trial." *Id.*

¶ 36     Last, we address defendant's claim that he was denied his right to confront K.C. in the OP case. Even if this argument—concerning an entirely different proceeding—could be properly raised in the present petition, it would not warrant relief. In support of this argument, defendant relied on *Rahimi*, asserting that it was "newly discovered" case law because it was unavailable at the time of trial. Defendant cited a portion of the decision that spoke generally of the right of a

defendant to confront his accusers at trial.  See *Rahimi*, 602 U.S. at 710 (Gorsuch, J., concurring).

This is simply not newly discovered evidence.  Indeed, defendant could have raised this claim even

without *Rahimi*.  In any event, there is no dispute that defendant had the opportunity to confront

K.C. at trial.

¶ 37                                    III. CONCLUSION

¶ 38     For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 39     Affirmed.